UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

ARTHUR L. BUSTAMANTE,            )
                                 )
          Movant,                )
                                 )
     vs.                         )          Case No. 1:10CV13 CDP
                                 )
UNITED STATES OF AMERICA,        )
                                 )
          Respondent.            )

## MEMORANDUM AND ORDER

Movant Arthur L. Bustamante brings this case under 28 U.S.C. § 2255,

seeking to vacate, set aside, or correct his sentence.  Bustamante was sentenced to

21 months imprisonment following his conviction by a jury of one count of

uttering a counterfeit security, one count of impersonating a United States citizen,

and one count of false statement.  Criminal Case No. 1:05CR131 CDP.  His

conviction and sentence were affirmed on appeal.  *United States v. Bustamante*,

248 Fed. Appx. 763 (8th Cir. 2007).

As grounds for his § 2255 motion, Bustamante raises claims of actual

innocence and mistaken identity, and alleges that he received ineffective

assistance of counsel.  He also asserts claims of judicial and prosecutorial

misconduct.  The record affirmatively refutes Bustamante's claims, however, so I

will deny the motion without a hearing.

## Background

In the spring of 2005, employees with ST&P Communications began to notice suspicious transactions associated with the company's account at Sky Bank in Toledo, Ohio. ST&P is a business in Ohio that provides marketing and advertising services to customers throughout the United States. A review of the company's accounts revealed that five counterfeit checks were drawn from these accounts.

Around the same time, a representative from the Wall Street Journal informed ST&P's treasurer and Chief Financial Officer, James Maxen, that the Journal had not received a payment of $148,974.86 for advertising services. Maxen reviewed ST&P's records and determined that the company had received an invoice from the Wall Street Journal for that amount in late March of 2005. He also found that ST&P had issued a check to the Wall Street Journal in April for the full amount, and that the check had been placed in the mail for delivery to the Wall Street Journal. However, the Wall Street Journal never received the payment.

Maxen next reviewed ST&P's Sky Bank account information and found that a charge had been made to the account in the amount of $148,974.86. A copy of that charged check revealed that the check had the same routing number as the check issued to the Wall Street Journal, but it contained Maxen's forged signature and was issued to Premier Network of Oxly, Missouri. Maxen and ST&P had

never had any business dealings with Premier Network, and Maxen knew of no reason for ST&P to issue payment to this company. The check had been deposited in an account at the First Missouri State Bank in Poplar Bluff, Missouri. Further investigations revealed that Bustamante, using the name King Arthur XIII, had deposited the check into a business account in the name of Premier Network at First Missouri State Bank on May 2, 2005. On May 10, Bustamante had transferred $104,282.40 from that account to another account in Premier Network's name. After investigators contacted First Missouri State Bank and informed employees about the suspicious charges, all Premier Network accounts were frozen.

On May 25, Bustamante returned to First Missouri State Bank and attempted to withdraw funds from the Premier Network accounts. Bank employees refused to allow the withdrawals because of the holds, and Bustamante spoke with a senior official at the Bank about why the money could not be released to him. Bustamante first stated that the money was his, but later reported that he was an undercover federal agent investigating fraud perpetrated by Saudi Arabians. Bustamante stated that he needed the funds released so that the investigation could go forward. Bank officials refused, and Bustamante left the Bank without withdrawing any funds.

Investigators next obtained and served a search warrant at Bustamante's residence near Doniphan, Missouri. When officers arrived, Bustamante answered the door but identified himself as Mike Dentor, a visitor from California. Officers quickly discovered Bustamante's true identity and began searching his residence. Several passports in different names were discovered, together with a variety of other documents and notebooks containing Bustamante's aliases, including Napoleon Arturo Bustamante and Art Bustamante. Bustamante was then arrested.

Based on their discovery of multiple passports, investigators enlisted the assistance of agents with the Bureau of Immigration and Customs Enforcement (ICE). An ICE agent interviewed Bustamante by telephone on June 3, 2005 while he was in the custody of the Butler County Jail. Bustamante told the agent that he was a U.S. Citizen by birth. However, additional investigation by ICE indicated that Bustamante was actually born in the Phillippines to Filipino parents, and that Bustamante had never applied for or received U.S. citizenship.

On September 16, 2005, a four-count indictment was returned. Count One charged Bustamante with uttering a counterfeit check, in violation of 18 U.S.C. § 513(a). Count Two charged him with impersonating an undercover federal agent, in violation of 18 U.S.C. § 912. In Count Three, Bustamante was charged with falsely representing himself to be a U.S. Citizen when questioned by the ICE agent, in violation of 18 U.S.C. § 911. Count Four charged him with making a

false statement in a matter within the jurisdiction of the U.S. government, in violation of 18 U.S.C. § 1001(a)(2), for the same conduct as alleged in Count Three.

Bustamante pleaded not guilty and was convicted by a jury of Counts One, Three, and Four after a two-day trial. Count Two was dismissed upon Bustamante's motion before the case was sent to the jury. The government called ten witnesses, including First Missouri State Bank employees who identified movant Bustamante as the person who had deposited the forged ST&P checks and had attempted to withdraw funds from those accounts. The government also called ST&P CFO Maxen, who testified that he had not written the check to Bustamante or Premier Network, that his company had no business dealings with Bustamante or Premier Network, and that the check deposited by Bustamante contained Maxen's forged signature. Several investigators also testified, including the ICE agent who spoke with Bustamante on the phone. This agent testified that Bustamante had identified himself as a U.S. citizen during their telephone interview, but that the agent's investigations revealed that Bustamante was not a U.S. citizen. Bustamante's nephew also testified that he met his uncle in the Phillippines in the 1970s, when Bustamante was married to a Filipino woman and had children born in the Phillippines. Although Bustamante initially indicated that

he would testify in his defense, he decided not to testify during trial, and presented no other witnesses in his defense.

Following Bustamante's jury conviction, a presentence investigation report (PSR) was prepared. The PSR determined that Bustamante's Base Offense Level for Counts One, Three, and Four was six. Ten levels were added because the intended loss to ST&P was more than $120,000, resulting in a Total Offense Level of sixteen. Bustamante had a criminal history category of I, so the advisory sentence guidelines range for all Counts was 21-27 months. On May 10, 2006, I sentenced Bustamante to 21 months imprisonment and two years supervised release.

Through counsel, Bustamante appealed the conviction and sentence, raising four grounds. Bustamante first claimed that the indictment should have been dismissed because his rights under the Speedy Trial Act, 18 U.S.C. §§ 3161 *et seq.*, were violated. The Eighth Circuit disagreed, concluding that there were no Speedy Trial Act violations. *See Bustamante*, 248 Fed. Appx. at 764. Bustamante also argued that the indictment should have been dismissed under the doctrines of double jeopardy, collateral estoppel, and res judicata, because an Administrative Law Judge had previously found that he was a U.S. citizen. The Eighth Circuit rejected this argument, because a "finding by an administrative law judge does not preclude a subsequent related criminal prosecution." *Id.* (citing cases). Rejecting

Bustamante's third claim, the Eighth Circuit also concluded that I did not err by denying his motion for judgment of acquittal as to Counts Three and Four, because there was sufficient evidence to support the jury's guilty verdict on these counts, and because the counts were not multiplicitous. *See id.* at 764-65. Bustamante asserted in his fourth ground that I erred by applying a 10-level upward adjustment to his base offense level for the total amount of intended loss, but the Eighth Circuit concluded that I made no errors in sentencing. *Id.* at 765. Finally, Bustamante raised several *pro se* claims of ineffective assistance of counsel, but the Eighth Circuit denied them as inappropriately raised in a direct appeal. *Id.*

Bustamante filed this *pro se* § 2255 motion on January 11, 2010, asserting that he is actually innocent. In particular, he alleges that he is actually Arthur Lee Bustamante, a/k/a King Arthur XIII, and that Napoleon Arturo Bustamante is another person who actually committed these crimes. He also claims that counsel was ineffective by failing:

- to call several witnesses who could have testified to Bustamante's innocence;

- to prepare him to testify in his own defense;

- to prove that Napoleon Arturo Bustamante was another person and the actual perpetrator of the crimes with which Bustamante was charged;

- to prove that ST&P CFO Maxen and Bustamante had an agreement to share the forged check;

- to move to suppress evidence obtained during the search of his residence;

- to present exculpatory evidence, including evidence that Bustamante was a U.S. citizen;

- to cross-examine one arresting officer on his allegedly false testimony that he arrested Bustamante, and to prove that the government relied on this false testimony; and

- to challenge the indictment on Speedy Trial Act grounds.

He also asserts claims of judicial and prosecutorial misconduct related to trial witnesses' alleged false testimony and his arrest warrant, but a review of these claims reveals that they are actually claims based on ineffective assistance of counsel.[1]

## Discussion

I will not hold an evidentiary hearing on this motion. "A petitioner is entitled to an evidentiary hearing on a section 2255 motion unless the motion and the files and the records of the case conclusively show that he is entitled to no relief." *Anjulo-Lopez v. United States*, 541 F.3d 814, 817 (8th Cir. 2008) (internal

---

[1]On November 23, 2010, trial counsel for Bustamante, Michael Skrien, filed notice in Bustamante's criminal case indicating that he would file a motion for a new trial based upon newly discovered evidence within thirty days, or December 23, 2010. That date passed, however, without any more notice or motions from counsel.

quotation marks, alterations, and citation omitted). No hearing is required, however, where the claim is inadequate on its face or if the record affirmatively refutes the factual assertions upon which it is based." *Id.* (internal quotation marks and citation omitted). As discussed in greater detail below, the record and files reveal that none of Bustamante's claims has merit, so no hearing is necessary.

## Ineffective Assistance of Counsel

All of the claims Bustamante raises in his motion are premised on counsel's alleged ineffective assistance at trial. The Sixth Amendment establishes the right of the criminally accused to the effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 686 (1984). To state a claim for ineffective assistance of counsel, Bustamante must prove two elements. First, he "must show that counsel's performance was deficient. This requires a showing that counsel made errors so serious that counsel was not functioning as the counsel guaranteed the defendant by the Sixth Amendment." *Id.* at 687. In considering whether this showing has been made, "judicial scrutiny of counsel's performance must be highly defential." *Id.* at 689. I must seek to "eliminate the distorting effects of hindsight" by examining counsel's performance from counsel's perspective at the time of the alleged error. *Id.* Second, Bustamante "must show that the deficient performance prejudiced the defense." *Id.* at 687. This requires him to demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of

the proceeding would have been different." *Id.* at 694. I need not address both elements if Bustamante makes an insufficient showing on either. *See Engelen v. United States*, 68 F.3d 238, 241 (8th Cir. 1995).

**Failure to Call Witnesses**

In his motion and related filings, Bustamante alleges that counsel failed to call four witnesses whose testimony would have exonerated him. He first claims that counsel should have called two bank tellers at First Missouri State Bank, Arcille Cunningham and Sheila Vinson, because they could have testified that the ST&P check Bustamante deposited was genuine. He also claims counsel should have called police officers whose testimony could have proven his innocence. These claims are related to his current claims of actual innocence and mistaken identity – that Napoleon Bustamante is a different person and the actual perpetrator of these crimes. But the record either affirmatively refutes Bustamante's claims, or reveals that counsel was not ineffective for failing to call these witnesses.

To begin with, Bustamante adduces no evidence in support of his claims of actual innocence and of mistaken identity.[2] At trial, there was more than sufficient evidence that Arthur Bustamante, a/k/a King Arthur XIII, and Napoleon

---

[2]Bustamante's actual innocence claims are at times contradictory. On one hand, he claims Napoleon Bustamante committed the crimes, but on the other hand, he claims Napoleon Bustamante was out of the country in the Phillippines when the crimes were being committed.

Bustamante were one and the same person, and that this person was the defendant who committed the crimes charged in the indictment. Indeed, Bustamante's nephew identified Bustamante as his uncle and the defendant sitting in the courtroom during his testimony at trial. Bustamante's nephew also testified that he met Bustamante in the Phillippines in the late 1970s, and that he had gone to live with Bustamante in California in the 1980s. Additionally, bank tellers – including Sheila Vinson – from First Missouri State Bank identified Bustamante as the man who had deposited the forged ST&P check into Premier Network's account and then tried withdraw funds from those accounts. Finally, the officers who arrested Bustamante and searched his residence testified that he was the defendant in the courtroom, and that their search of Bustamante's residence revealed several passports in different names. They also testified that they discovered a notebook with the name Napoleon Bustamante blacked out and Art Bustamante written above it. Finally, an FBI agent testified that during his investigation of Bustamante he had found a marriage certificate from Bustamante's first marriage in the Phillippines listing Bustamante as a Filipino citizen.

Accordingly, there was plenty of evidence at trial of Bustamante's guilt to overcome his unsupported claims of actual innocence and mistaken identity. Moreover, counsel did attempt at trial to develop the defense that Arthur

Bustamante and Napoleon Bustamante were different persons. For example, he asked Bustamante's nephew if he ever knew Bustamante to use the name, Napoleon Bustamante, and his nephew testified that he had never known Bustamante to use that name. The issue was therefore before the jury, which determined that Bustamante committed the crimes as charged in the indictment. In the face of this overwhelming evidence in the record, I need not give any weight to Bustamante's unsupported allegations of actual innocence and mistaken identity. *See United States v. McGill*, 11 F.3d 223, 225 (1st Cir. 1993) (in considering § 2255 motions, courts do not need to give any weight to a movant's conclusory allegations, self-interested characterizations, or opprobrious epithets). Accordingly, these claims fail.[3]

Bustamante's more specific claim – that counsel was ineffective for failing to call Arcille Cunningham and Sheila Vinson to testify – also fails. He claims these two bank tellers could have testified that the ST&P check he deposited was genuine, but the record refutes that claim. First, as discussed above, Sheila Vinson did testify at trial that Bustamante deposited this check into Premier Network's account, and that the funds were transferred from ST&P's account at Sky Bank to First Premier's account at First Missouri State Bank. But Bustamante cannot show

---

[3]For this same reason, Bustamante's claim that counsel was ineffective for failing to prove that Napoleon was another person who actually committed the crimes also fails.

that counsel was ineffective for failing to have Arcille Cunningham testify to the same fact. The fact that the funds were transferred from one account to another does not mean that the check was genuine. Rather, the evidence at trial revealed that Bustamante successfully forged the real ST&P check and was able to deposit the funds in Premier Network's account before his scheme was discovered. Having another bank clerk testify that the forged check was deposited in Premier Network's account would not have aided Bustamante's defense, because it would have not disproved ST&P CFO Maxen's testimony that the check Bustamante deposited was forged and did not bear his signature. Moreover, in an affidavit submitted in support of the government's opposition, Bustamante's counsel avers that he did not call either witness to testify in Bustamante's defense because he did not believe their testimony would aid Bustamante's defense. Because Bustamante presents no evidence or arguments that this decision was incorrect, this claim must fail.

Bustamante also claims counsel was ineffective for failing to call two Poplar Bluff, Missouri police officers to testify in his defense. He first claims that counsel should have called Sergeant David Sutton to testify that he actually executed the search warrant on Bustamante, not Sergeant Adam Whittom. Bustamante alleges that Sergeant Whittom falsely testified that he executed the search warrant, but a transcript of the trial reveals this is incorrect. Indeed, during

counsel's cross-examination of this witness, Sergeant Whittom stated the exact opposite:

> MR. SKRIEN:     And it wasn't you that served the warrant?

> SERGEANT WHITTOM:     No, I was present, but I did not sign off on the warrant.

Whittom also never testified that he arrested Bustamante. Thus, because the record reveals that Sergeant Whittom never testified that he executed the warrant on Bustamante, this claim fails. Morever, even if Sergeant Whittom had been incorrect in his testimony as Bustamante alleges, counsel's failure to call Sergeant Sutton to testify in rebuttal would not amount to ineffective assistance. At most, this testimony would have provided some impeachment value, but it would not have aided Bustamante's defense of innocence or mistaken identity.

Bustamante next claims counsel should have called Sergeant Greg Brainard because this witness could have testified that he reviewed the evidence seized at Bustamante's home and discovered that Bustamante and Maxen were in contact, and that Maxen concocted the scheme to defraud ST&P and involved Bustamante unwillingly. As with his claim of mistaken identity, however, Bustamante produces no evidence to substantiate this claim. Instead, the record reveals that Maxen testified under penalty of perjury that he had never heard of Bustamante or First Premier. Moreover, such a scheme makes little sense given the rest of the evidence at trial, as Maxen was the ST&P employee who contacted authorities

when he discovered the suspicious check. Finally, Bustamante adduces no evidence, and there is none in the record, that Sergeant Brainard ever discovered such evidence during his investigation of Bustamante. Thus, just as with his claim of mistaken identity, Bustamante's unsupported claim that Maxen was the mastermind of the fraudulent scheme is affirmatively refuted by the record. Because there is nothing before me to indicate that either officer's testimony would have aided Bustamante's defense, counsel was not ineffective for failing to call them. Moreover, Bustamante's related claim that counsel was ineffective for failing to prove any agreement between him and Maxen fails for the same reasons.

### Failure to Prepare Bustamante for Testimony

Bustamante next claims that counsel was ineffective for failing to prepare him to testify in his own defense, and that he would have testified if counsel had better prepared him. These claims are refuted by Bustamante's and counsel's statements at trial:

> THE COURT: Mr. Skien, does the defendant intent to present evidence?
>
> MR. SKRIEN: Yes, we do, Your Honor.
>
> THE COURT: Before you bring in the jury, Mr. Skrien, let me ask you, and I don't know if your client is going to testify. Mr. Arthur, let me ask you this. Have you discussed with your counsel your right to testify or not testify in this trial?
>
> DEFENDANT: We did, Your Honor.

THE COURT:      Okay, and I'm not asking you what your
decision is.  Mr. Skrien will tell us when your time comes, but
understand that's your choice.  You can either testify or not
testify.  If you choose not to testify, the jury cannot make any
inference or draw any conclusions because you didn't testify.  I will
instruct them if you request me to not to consider it at all.  Do you
understand that?

DEFENDANT:      Yes, Your Honor.

THE COURT:      But it is your decision after consultation with your
counsel, okay?  All right.  You may bring in the jury.

* * *

MR. SKRIEN:      Could we approach briefly?

(The following conference was had at side bar out of the
hearing of the jury.)

MR. SKRIEN:      Judge, I'm sorry to do this, but I don't
believe he's going to testify.  We're going to rest.

THE COURT:      Oh, okay.  That's fine.  Do you want me to talk to
him any more outside the presence of the jury, or are you satisfied
with the record that's been made?

MR. SKRIEN:      I'm very satisfied.

* * *

Rather than supporting Bustamante's allegations that trial counsel failed to

prepare him to testify – or coerced him not to testify as Bustamante claims

elsewhere in his motion – the record reveals that Bustamante made the decision

not to testify at trial, after consulting with his attorney, and after I discussed the

issue with him.  Had he believed counsel had failed to prepare him, he had ample

opportunity to tell me that. Accordingly, this claim of ineffective assistance of counsel fails.

**Failure to Suppress Evidence**

Bustamante next claims counsel was ineffective for failing to move to suppress the evidence seized during the search of his home.[4] He claims the search was unconstitutional because it was executed pursuant to a warrant that was not effective until the day after the search. But the warrant Bustamante attaches to his motion refutes this claim. Specifically, the warrant was issued on May 31, 2005, and it contains no requirement that the arresting officer execute it the day after, or June 1, 2005. Instead, it requires the arresting officer to serve the warrant within 10 days of issuance. It is undisputed that the warrant was served that same day, and so Bustamante has failed to present any evidence suggesting that any of his Constitutional rights were violated by the search and seizure of evidence from his home. Accordingly, any motion to suppress by counsel would have failed, and counsel is not ineffective for failing to raise a meritless argument. *See Rodriguez v. United States*, 17 F.3d 225, 226 (8th Cir. 1994).

Moreover, Bustamante knowingly waived the right to file pretrial motions. In a statement filed with the Court, Bustamante indicated that he had reviewed

---

[4]Bustamante also labels this claim as judicial misconduct, but he fails to include any factual allegations to support that claim, including how the state judge violated his rights by issuing this warrant. In the absence of any supporting factual allegations, this claim must fail.

discovery materials from the government with his counsel and had determined that he did not want to raise any issues in pretrial motions. Bustamante presents no evidence now suggesting that decision was not knowing or voluntary. Accordingly, this claim fails.

**Failure to Introduce Exculpatory Evidence**

Throughough his motion and related filings, Bustamante claims that counsel was ineffective for failing to introduce several items of evidence that, Bustamante claims, could have supported his (at times contradictory) defenses of mistaken identity and actual innocence. As discussed above, however, there is no evidence aside from these unsupported allegations to suggest that movant Bustamante was anyone but the person who uttered the forged check and falsely represented himself as a U.S. citizen. There is also no evidence to support his claim that Maxen was the mastermind of the scheme. Indeed, none of the evidence Bustamante asserts his counsel should have submitted supports any of these claims.

Bustamante claims counsel should have introduced the back of an INS I-94 document to show that Napoleon Bustamante left the United States for the Philippines in the 1970s and never returned. But the back of this document does not prove that Napoleon Bustamante never returned to the United States after visiting the Phillippines. At most, it proves that Bustamante left the United States

in the 1970s, but his own nephew's unchallenged testimony that he lived with Bustamante in California in the 1980s contradicts Bustamante's assertion that he never returned. Moreover, there was plenty of evidence at trial that movant Bustamante went by this and several other names, and was the person who committed the crimes charged in the indictment. The back of the INS I-94 form does nothing to disprove those facts.

Bustamante next points to several other items that, he claims, prove that he is a United States citizen, including birth certificates of his daughters that list him as a United States citizen. But the jury heard this evidence, along with other evidence that Bustamante was born in the Phillippines, changed his name frequently, and used various aliases. Thus, the issue of Bustamante's citizenship was before the jury, which decided the issue against him. None of the items to which Bustamante now refers is sufficient evidence of his U.S. citizenship to overcome the jury's verdict.

Moreover, as the government points out, Bustamante's counsel presented some evidence suggesting that Bustamante is a U.S. citizen. In his cross-examination of the FBI agent who investigated Bustamante's citizenship, counsel asked:

> MR. SKRIEN: Also, are you aware of the Social Security hearing and subsequent finding?
>
> THE WITNESS: I am.

MR. SKRIEN:     And I believe there is only one – that's the one I'm talking about, where he was found to be a citizen by an Administrative Law Judge, are you aware of that?

THE WITNESS:     I believe that's incorrect.

MR. SKRIEN:     Let me ask it in a different way.  Did an Administrative Law Judge hold a hearing and find there is documentary proof that claimant is a U.S. citizen?

THE WITNESS:     That is correct, there is documentary proof that he is an American citizen, but they did not rule that he was an American citizen.

MR. SKRIEN:     Within his jurisdiction, did the Administrative Law Judge also hold there was credible and convincing evidence that he is a citizen of the United States?

THE WITNESS:     That wording does sound correct.

MR. SKRIEN:     Also, that he also held that he has provided clear and convincing evidence that he is a citizen of the United States?

THE WITNESS:     That sounds correct as well.

On the basis of this record, I cannot conclude that counsel's representation was ineffective in any way.[5]

### Remaining Claims of Ineffective Assistance

Bustamante's remaining claims similarly fail.  He alleges counsel was ineffective because his Speedy Trial Act rights were violated and counsel failed to

---

[5]In his reply brief, Bustamante also asserts counsel should have introduced the real check that ST&P initially attempted to send to the Wall Street Journal.  But it is undisputed that this check was never recovered.  In any event, there was undisputed testimony that movant Bustamante was the person who uttered the forged ST&P check, and presence of the original check would not have rebutted that evidence.

raise this issue.  However, counsel did raise this issue on appeal, and it was decided against Bustamante.  *See Bustamante*, 248 Fed. Appx. at 764 ("To begin with, we hold that he district court did not err in denying Bustamante's motion to quash his waiver of speedy-trial rights, and that the court fully complied with the Speedy Trial Act.").  Bustamante may not use his § 2255 motion to relitigate arguments he raised and lost on appeal simply by attaching an ineffective assistance of counsel label on them, and so this claim fails.  *See, e.g., United States v. Shabazz*, 657 F.2d 189, 190 (8th Cir. 1980) ("It is well settled that claims which were raised and decided on direct appeal cannot be relitigated in a motion to vacate pursuant to 28 U.S.C. § 2255.").  Finally, he claims counsel was ineffective for failing to challenge Sergeant Whittom's perjury, and that the government committed misconduct by relying on this perjury.  However, as discussed above, the record refutes Bustamante's claim that Sergeant Whittom perjured himself during his testimony.

Accordingly, Bustamante has failed to show any ineffective assistance of counsel, and his motion will be denied.  Bustamante has also failed to make a substantial showing of the denial of a federal constitutional right, and so this Court will not issue a certificate of appealability.  *See Cox v. Norris*, 133 F.3d 565, 569 (8th Cir. 1997) (citing *Flinger v. Delo*, 16 F.3d 878, 882-83 (8th Cir. 1994)) (substantial showing must be debatable among reasonable jurists, reasonably

subject to a different outcome on appeal, or otherwise deserving of further proceedings).

Accordingly,

**IT IS HEREBY ORDERED** that the motion of Arthur L. Bustamante to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255 [#1] is denied.

**IT IS FURTHER ORDERED** that the Court will not issue a certificate of appealability, as Bustamante has not made a substantial showing of the denial of a federal constitutional right.

**IT IS FURTHER ORDERED** that the government's motion for an extension of time [#12] is granted.

A separate Judgment in accordance with this Memorandum and Order is entered this same date.

CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 30th day of June, 2011.